UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PSI, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NAUTILUS INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 12-12073-DJC |

# MEMORANDUM AND ORDER

CASPER, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　December 30, 2014

## I. Introduction

Plaintiff PSI, LLC ("PSI") has filed this lawsuit against Defendant Nautilus Insurance Company ("Nautilus") alleging violations of the Fair Housing Amendments Act ("FHAA"), an amendment to the Fair Housing Act (the "FHA"), 42 U.S.C. § 3601, *et seq.*, and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq*. D. 1. Nautilus has now moved for summary judgment. D. 30. For the reasons stated below, the Court ALLOWS the motion.

## II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (citation and internal quotation marks omitted). The movant bears the burden of demonstrating

1

the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citation omitted).

## III. Factual Background

Unless otherwise noted, the following facts are as stated in Nautilus's statement of facts, D. 31, and are not disputed by PSI, D. 40 (PSI's response). PSI was organized in May 2012. D. 31 ¶ 3; D. 40 ¶ 3. It operates two sober homes for individuals recovering from substance abuse, one in Revere, Massachusetts and the other in East Boston, Massachusetts. Id. ¶ 4; D. 40 ¶ 4. Each property has three floors and has capacity for 30 residents. Id. ¶¶ 7, 10; D. 40 ¶¶ 7, 10.

Following PSI's acquisition of the properties, PSI retained an insurance broker, Lukatsky Insurance Group ("Lukatsky"), to secure insurance for the sober homes. Id. ¶ 13; D. 40 ¶ 13. In April 2012, Lukatsky requested quotes from A.I.I. Insurance Brokerage of Mass, Inc. ("A.I.I.") for liability and property insurance for the sober homes. Id. ¶ 16; D. 40 ¶ 16. A.I.I. is a "special broker" pursuant to Mass. Gen. L. c. 175, § 168, and may consequently coordinate insurance agreements between "surplus line" insurers, such as Nautilus, and Massachusetts entities. D. 32 at 3, n. 5.

In calculating PSI's premium, A.I.I. classified the sober homes as "Halfway Houses—Other Than Not-For-Profit." D. 31 ¶ 18; D. 40 ¶ 18. This classification includes not only sober

2

homes, but other forms of transitional housing, such as transitional housing for the homeless. Id. ¶ 19; D. 40 ¶ 19. Liability for properties classified as halfway houses is calculated according to the number of beds at the property, which is also how Nautilus calculates liability coverage for shelters and student housing. D. 46, Exh. 1 ¶¶ 3-5 (Chalmers Affidavit). A.I.I. provided Lukatsky with a quote of $9,886.56 for $500,000 per occurrence and $1,000,000 annual aggregate in liability coverage and $900,000 in first-party property coverage for the two sober houses, which Lukatsky thereafter accepted on behalf of PSI. D. 31 ¶¶ 20, 22-24; D. 40 ¶¶ 20, 22-24. The $9,886.56 premium was composed of $3,158.00 per month for liability coverage and $6,156.00 a month for property coverage with $572.56 in taxes and fees. D. 30, Exh. 10 at 4. In May 2012, after Lukatsky accepted the quote on PSI's behalf, A.I.I. confirmed coverage between Nautilus and PSI. D. 31 ¶ 24; D. 40 ¶ 24. Nautilus then issued the policy to PSI, effective May 17, 2012 through May 17, 2013. Id. ¶ 25; D. 40 ¶ 25. The premium was never altered during the coverage period. Id. ¶ 29; D. 40 ¶ 29. In August 2012, Nautilus cancelled the policy for non-payment of the premium. Id. ¶ 33; D. 40 ¶ 33.

**IV.    Procedural History**

Plaintiffs initiated this action on November 7, 2012. D. 1. PSI has now moved for summary judgment. D. 30. The Court held a hearing on the pending motion on November 19, 2014 and took the matter under advisement. D. 48.

**V.     Discussion**

**A.     Whether Nautilus Violated the Fair Housing Act**

The FHA makes it unlawful to discriminate "in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of-- (A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented,

3

or made available; or (C) any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1)(A)-(C). The FHA also prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of [the same affiliated people identified under subsection (f)(1)]." 42 U.S.C. § 3604(f)(2). Under the statute, prohibited discrimination also includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

Under the FHA, a handicap includes substance abuse or alcoholism that "substantially limits one or more major life activities," 24 C.F.R. § 100.201; § 100.201(a)(2), although it "does not include current, illegal use of or addiction to a controlled substance." Id. In their papers, the parties do not appear to dispute that residents of sober homes may be covered under the statute. However, at the hearing, counsel for Nautilus questioned whether a sober house has standing to raise claims on behalf of its residents. The FHA, specifically 42 U.S.C. § 3604(f)(2)(C), prohibits discrimination in the provisions of services because of the handicap of "any person associated with [the buyer or renter of a dwelling]." See Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo, 988 F.2d 252, 257 n. 6 (1st Cir. 1993) (noting that the FHA "may proscribe discriminatory acts by persons who are neither sellers nor lessors of property"). Standing requires: (1) an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged action, and (3) that the injury will likely be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Moreover, other courts have found standing for operators of group homes asserting FHA claims. See Tsombanidis v. W. Haven Fire

Dep't, 352 F.3d 565, 574 n. 6 (2d Cir. 2003) (noting in the context of zoning claim under FHA, "it is clear that both [the landlord], as owner of the home, and [the operating entity], as the parent organization, will incur an injury and have standing in this case"); Caron Found. of Florida, Inc. v. City of Delray Beach, 879 F. Supp. 2d 1353, 1364 (S.D. Fla. 2012) (providing that "[a]s a provider of services for these [disabled] individuals, [the alcohol and substance abuse rehabilitation facility] has standing"); Sharpvisions, Inc. v. Borough of Plum, 475 F. Supp. 2d 514, 521 (W.D. Pa. 2007) (explaining "agencies, such as [the operator of a group home for disabled individuals], that provide residential services to persons with disabilities, have standing to challenge municipal attempts to preclude them from pursuing their missions"); Horizon House Dev. Servs., Inc. v. Twp. of Upper Southampton, 804 F. Supp. 683, 692 (E.D. Pa. 1992) (finding standing for operator of home for disabled individuals and noting "[c]ourts have explicitly held that a person who is not himself handicapped, but is prevented from providing housing for handicapped persons by a municipality's discriminatory acts, has standing" under the statute). Because PSI properly alleges it is harmed by Nautilus's allegedly discriminatory provision of insurance as a result of its association with disabled individuals (i.e., the sober house residents), the Court concludes PSI has standing.

As a preliminary matter, though PSI's complaint alleged Nautilus increased its insurance premium upon learning that PSI operated a sober home, D. 1 ¶ 5, PSI now concedes Nautilus never altered the premium. D. 31 ¶ 29, D. 40 ¶ 29. Thus, the Court considers PSI's allegation that Nautilus denied PSI insurance "on equal terms to those that are not disabled," and that its refusal, upon request, to provide PSI with insurance rates applicable to single family rental properties constitute a failure to make reasonable accommodation, in violation of the FHA. D. 1 ¶¶ 6-7, 19. Courts have applied the FHA in the insurance context. See N.A.A.C.P. v. Am.

Family Mut. Ins. Co., 978 F.2d 287, 301 (7th Cir. 1992). As discrimination under the FHA may be proven by disparate treatment, disparate impact and failure to make reasonable accommodations, Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010), the Court will consider each of these theories in turn.

*1.  Disparate Treatment*

In the absence of direct evidence of discriminatory intent, the Court considers the familiar burden shifting framework under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). S. Middlesex Opportunity Council, Inc. v. Town of Framingham, 752 F. Supp. 2d 85, 96 (D. Mass. 2010); see Pina v. Town of Plympton, 529 F. Supp. 2d 151, 155-56 (D. Mass. 2007) (noting that "[w]hen a plaintiff offers no direct evidence of discrimination, his claim of discrimination under the FHA is to be examined under the burden-shifting framework of McDonnell Douglas, established in Title VII cases") (quotation and citation omitted).

First, under this framework, the plaintiff must make a *prima facie* case of unlawful discrimination. S. Middlesex Opportunity Council, Inc., 752 F. Supp. 2d at 96. The *prima facie* case is a "small showing," "not onerous" and "easily made." Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003) (quotations omitted). PSI argues Nautilus failed to provide insurance at ordinary rates because PSI leases the property to disabled individuals. D. 1 ¶ 14. Specifically, PSI challenges the $261 difference in premiums for property coverage and the $2,513 difference for liability coverage Nautilus would have charged had the two properties been classified as three-family dwellings. D. 30, Exh. 10 at 4 $3158 premium for liability and $6156 premium for property coverage for PSI); D. 46, Exh. 3 ¶¶ 3-4 ($645 premium for liability and $5895 premium for property coverage). Although both of the two properties functioned as three-family homes prior to PSI's operation of them as sober homes, D. 31 ¶ 7; D. 40 ¶ 7, Nautilus classified each

6

home as a "Halfway House—Other Than Not-For-Profit" and correspondingly calculated its premiums based upon occupancy, in this case thirty beds. Id. ¶¶ 10, 18; ¶¶ 10, 18.

Assuming without deciding that PSI has provided sufficient evidence to offer an inference of unlawful discrimination, "the burden shifts to the defendant to advance some legitimate and nondiscriminatory reason for his actions." Casa Marie, Inc., 988 F.2d at 269 n. 20. The nondiscriminatory reason for classifying the sober homes as halfway houses (and calculating the liability insurance based upon occupancy) provided by Nautilus was that the properties were not operating as three-family dwellings and, therefore, posed a different liability risk, resulting in a higher premium. D. 46, Exh. 1 ¶ 12 (Chamber's Aff.). Notably, the significant difference in premium was based upon liability coverage and not upon the property coverage. Nautilus contends there is more foot traffic in a commercial operation, such as a sober house, since unrelated residents may have non-overlapping circles of visitors who visit the property. Id. Moreover, the duration of a tenancy in a three-family dwelling is typically at least a year, while halfway houses have a higher turnover, resulting in a greater number of individuals residing in and visiting the premises. Id. This is not, as PSI has argued, an instance in which Nautilus calculated premiums based on the disability of the occupants. Rather, having been "tasked with selecting the classification that best fits the nature of the insured's operations," selected a neutral classification that not only did not consider the residents' disability status, but was also applied to other types of housing not specifically for members of any protected class, such as boarding houses and rooming houses. D. 32 at 17.

Since Nautilus has articulated a legitimate, nondiscriminatory reason for its classification and calculation of premium based on potential occupancy, the burden shifts to PSI to prove discriminatory intent. S. Middlesex Opportunity Council, Inc., 752 F. Supp. 2d at 96. PSI offers

7

no specific, admissible facts to carry its burden in this regard, instead relying on Nautilus's refusal to offer three-family dwelling rates in response to PSI's request. D. 39 at 3. Moreover, this case is distinguishable from the circumstances in Wai v. Allstate Ins. Co., 75 F. Supp. 2d 1, 6 (D.D.C. 1999), upon which PSI relies. There, the plaintiffs alleged that the insurance companies, respectively: (1) cancelled an existing policy, refused to provide insurance and recommended a different insurance agency upon learning that a property was occupied by disabled individuals; (2) refused to provide any insurance and referred the plaintiff to another insurance agency upon learning the property was occupied by disabled individuals; and (3) cancelled an existing policy because the home in question was a "group home" for disabled individuals which the insurance company stated posed a hazard to the company. Wai, 75 F. Supp. 2d at 3. In Wai, in the context of considering a motion to dismiss, the court considered rates but focused on "the denial of homeowners' insurance based on a resident's handicap," concluding that "[i]f, in order to rent to disabled persons, a landlord must risk losing her home through loss of mortgage financing, loss of catastrophe insurance, and loss of liability insurance, she will be disinclined to rent to disabled persons. Such powerful disincentives to rent to disabled persons, make housing unavailable to them." Id. at 6.

By contrast in this case, PSI was not denied insurance, and there is no indication that PSI was ever at risk of losing its ability to operate the sober homes. Rather, PSI was subject to a different liability premium that applies not only to sober houses, but boarding houses and rooming houses, other dwellings that are occupied by multiple, unrelated tenants. Moreover, PSI has offered nothing to refute the affidavit of Curtis Chambers, the Assistant Vice President of Northeast Underwriting and Miscellaneous Professional Liability for Nautilus, that "[t]he fact that the occupants of the Properties were in recovery from alcohol and/or drug abuse played no

role in the calculation of the premium." D. 30, Exh. 9 ¶ 12 (Chambers Aff.). Even if this attestation were put aside, it remains the case that PSI concedes that the premium was calculated "based upon the information provided to it by Lukatsky, including a physical description of the structure of each of the two locations for which insurance was requested and also based upon the fact that each location was designed to accommodate up to thirty individual residents." D. 31 ¶ 18; D. 40 ¶ 18. Moreover, it has provided nothing to refute Nautilus's evidence that it "has never classified a shelter, halfway house, student housing, or any other communal housing occupied by unrelated individuals, as a three-family home," D. 46, Exh. 1 ¶ 6 (Chambers Aff.), thereby undercutting the contention that the classification here reflects discriminatory intent. See D. 30, Exh. 6 at 3. That Nautilus calculated the premium based on the number of beds is not evidence of discriminatory intent where the record reveals the same calculation is utilized for other commercial residential properties not inhabited by disabled individuals. PSI's evidence proves only that Nautilus would charge less if the properties were classified as three-family dwellings, which Nautilus had a legitimate, nondiscriminatory reason to decline to do.

    2.  *Disparate Impact*

  In October, the Supreme Court granted certiorari to address whether disparate impact claims are cognizable under the Fair Housing Act. Texas Dept. Hous. & Comm. Affairs v. Inclusive Communities Project, 747 F.3d 275 (5th Cir. 2014), cert. granted, No. 13-1371, 83 U.S.L.W. 3183 (U.S. Oct. 2, 2014). In Inclusive Communities, the Fifth Circuit adopted the burden-shifting approach for disparate impact claims as outlined by regulations issued in 2013 by the Department of Housing and Urban Development ("HUD"). Id. at 282; 24 C.F.R. § 100.500; Implementation of the Fair Housing Act's Discriminatory Effects Standard, 78 Fed. Reg. 11,460 (Feb. 15, 2013). However, the regulations were recently rejected along with the

availability of a disparate-impact theory of FHA liability in Am. Ins. Ass'n v. United States Dep't of Hous. & Urban Dev., No. 13-00966 (RJL), 2014 WL 5802283, at *13 (D.D.C. Nov. 7, 2014).

Despite the pendency of the Supreme Court's focus on disparate impact claims under the FHA, the First Circuit has adopted "the consensus among the circuits" that disparate impact claims are permissible under the FHA. Langlois v. Abington Hous. Auth., 207 F.3d 43, 49 (1st Cir. 2000); see Macone v. Town of Wakefield, 277 F.3d 1, 5 (1st Cir. 2002); Astralis, 620 F.3d at 66. Accordingly, given this binding precedent, the Court will consider the disparate impact theory according to the burden-shifting framework outlined in the 2013 HUD regulations.

First, the charging party "has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect." 24 C.F.R. § 100.500(c)(1). Thus, PSI "has the threshold burden to show a discriminatory effect or impact—that the housing practice actually or predictably results in discrimination as defined under section 3604, or results in a disproportionate burden on members of a class protected by [the statute]." Casa Marie, 988 F.2d at 269 n. 20 (quotation and citations omitted). A demonstration of discriminatory impact does "no more than creat[e] a *prima facie* case, forcing the defendant to proffer a valid justification." Langlois, 207 F.3d at 50. Recently, the First Circuit quoted Ricci v. DeStefano, 557 U.S. 557, 587 (2009), describing a *prima facie* showing of disparate impact as "essentially a threshold showing of a significant statistical disparity . . . and nothing more." Jones v. City of Boston, 752 F.3d 38, 46 (1st Cir. 2014). Once PSI offers such evidence, the burden shifts to Nautilus to prove "that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests." 24 C.F.R. § 100.500(c)(2).

Here, PSI identified a policy: classifying sober homes as halfway houses and correspondingly calculating liability premiums based on occupancy. PSI alleges that because

premiums for three-family dwellings are not calculated according to occupancy, Nautilus's occupancy-based premium calculation for sober homes is "facially discriminatory and disadvantageous to the disabled." D. 39 at 3. To carry its burden, PSI must prove that the "challenged practice caused or predictably will cause a discriminatory effect." 24 C.F.R. § 100.500(c)(1). PSI argues "insurance costs for unrelated disabled individuals is [sic] greater than that of traditional families." D. 39 at 2. Yet the summary judgment record is devoid of any evidence, statistical or otherwise, indicating Nautilus's policy has caused or predictably will cause a discriminatory effect. PSI points to Chambers' deposition, in which he explains that the property insurance would be lower if the sober houses were classified as three-family dwellings. D. 39 at 2; D. 40, Exh. 1 at 16-17. In addition, PSI points to the lower premium of its previous policy (with a different insurer, Lloyd's), D. 39 at 1, but the previous policy was issued during the period before PSI was operating the properties as sober houses, D. 30, Exh. 4 at 26-27, and PSI fails to show how any such difference is evidence of Nautilus's discriminatory intent. Furthermore, the Nautilus policy provided significantly greater coverage than the previous policy, including greater coverage limits and a "replacement cost" valuation rather than "actual cash" valuation, which was significant given that the properties were each constructed over a century ago. Id. at 28.

Although PSI has not met its burden to establish a *prima facie* disparate impact claim, even if it had, it cannot proceed on this theory given that Nautilus has provided a legitimate, non-discriminatory reason for its decision, as discussed at length above.

### 3. Failure to Make Reasonable Accommodations

A *prima facie* case under 42 U.S.C. § 3604(f)(3)(B) requires: (1) a qualifying disability; (2) knowledge on the part of the defendant of the disability (or that the defendant reasonably

should have known of the disability); (3) a request for accommodation that is both reasonable and necessary to allow equal opportunity for use and enjoyment of the housing; and (4) that the defendant refused to make the requested accommodation. Astralis, 620 F.3d at 67 (citations omitted). As discussed above, the parties do not dispute that residents of PSI's sober homes, recovering addicts, have a qualifying disability. 24 C.F.R. § 100.201(a)(2). During the policy period, a representative of PSI put Nautilus on notice of the disability and its request for accommodation with the following message to a Nautilus agent:

> Please inform Nautilus Ins. that the subject property is a sober home as you've noted and that the home provides housing to disabled individuals under the Fair Housing Act. As such, this sober home seeks protection and an accommodation under the Fair Housing Act to receive equal access to insurance and the same policy rates available to single family rental housing. The extremely expensive insurance rates proposed make housing unavailable to the disabled. Please let me know if this policy will be reinstated at fair and appropriate rates. I need an answer immediately as my client must obtain coverage and is attempting to implement same through another carrier.

D. 40, Exh. 1 at 27 (excerpt of Chambers' deposition). The agent thereafter declined to adjust the rates. Id. at 28.

Having addressed the first two prongs, PSI's request must have been "reasonable" and "necessary to afford [a covered] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Here, PSI requested "the same policy rates available to single family rental housing." D. 40, Exh. 1 at 27. In the employment context, the First Circuit has noted it is a plaintiff's burden "to demonstrate that his requested accommodation "seem[ed] reasonable on its face." Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 90 (1st Cir. 2012) (alteration in original). Similarly, the Tenth Circuit has provided that "the [FHA] requires accommodations that are necessary (or indispensable or essential) to achieving the objective of equal housing

12

opportunities between those with disabilities and those without." Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City, 685 F.3d 917, 923 (10th Cir. 2012).

Typically, a request for reasonable accommodation concerns the removal of a physical barrier or an alteration of policies to allow equal participation in a program. See 24 C.F.R. § 100.204(b); see also Astralis, 620 F.3d at 68 (affirming finding of failure to reasonably accommodate when a condominium association refused to grant disabled residents special parking privileges). Though more attenuated requests may be appropriate under the statute, they must nevertheless be "necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas." 24 C.F.R. § 100.204(a).

Here, Nautilus argues PSI's request was not reasonable and was insufficiently related to the ability of the individuals at PSI's sober homes to enjoy their housing. D. 46 at 8. A request for reasonable accommodation "must explain how the accommodation requested is linked to some disability." Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001). PSI sought an accommodation that Nautilus "treat the properties as though occupied by single families in order to obtain a lower insurance premium." D. 39 at 1. This request, on the present record, fails to link the need for lower premiums to the equal opportunity that the disabled residents would have to use and enjoy the sober houses. Apart from stating it must "pass on the cost" to residents, PSI does not show how that insurance at the requested premium would result in lower costs to the residents or greater access to housing for disabled individuals.

The Court concludes that on this record PSI's request is unreasonable. The First Circuit has not squarely addressed requests for reasonable accommodations based solely on financial hardship, but several circuits have rejected this type of claim. See Salute v. Stratford Greens Garden Apartments, 136 F.3d 293, 301 (2d Cir. 1998) (noting "it is fundamental that the law

13

addresses the accommodation of handicaps, not the alleviation of economic disadvantages that may be correlated with having handicaps"); Bryant Woods Inn v. Howard Cty., 124 F.3d 597, 605 (4th Cir. 1997) (rejecting request for zoning variance because it "would provide not an equal opportunity to [a group home's] residents but a financial advantage to [the group home]").

The Court concludes that PSI's requested accommodation is unreasonable and unnecessary to allow the residents equal opportunity to enjoy the housing in question. PSI has not shown, on the present record, how such a purely economic accommodation is reasonable or necessary for the enjoyment of the sober house by its residents. Giebeler v. M & B Associates, 343 F.3d 1143, 1154 (9th Cir. 2003) (reversing grant of summary judgment against disabled plaintiff based on reasonableness of request for accommodation but offering in dicta, "[w]e expect, for example, that mandating lower rents for disabled individuals would fail the kind of reasonableness inquiry conducted in [U.S. Airways v. ] Barnett [, 535 U.S. 391 (2002)]"). This is particularly true in light of the dearth of evidence that indicates that a lower premium to PSI would be passed on as an accommodation to the residents.

Moreover, the Court's conclusion on this record is consistent with the rulings of other courts considering similar issues. A court in this district granted summary judgment against plaintiffs and refused to find an economic request for accommodation reasonable when Section 8 tenants requested an increase in the vouchers used to pay their rent. Brighton Vill. Nominee Trust v. Malyshev, No. 00-12311-G, 2004 WL 594974, at *6 (D. Mass. Mar. 23, 2004) (explaining that while "there may be a connection between [plaintiffs'] finances and the difficulties they face as a result of their disabilities, it cannot fairly be said that the voucher increases they requested would have been a reasonable accommodation of their disabilities"); see Batista v. Cooperativa de Vivienda Jardines de San Ignacio, No. 10-1953 GAG, 2013 WL

14

2123487, at *8 (D.P.R. May 15, 2013) (holding that a request to subsidize a rental fee for a disabled tenant was "purely economic and [was] thus unnecessary"). Another court in this Circuit, noting the First Circuit's silence on whether purely economic requests were cognizable at all, interpreted Barnett to require "special circumstances" in the context of financial requests for reasonable accommodation. Daniel v. Avesta Hous. Mgmt. Corp., No. 2:12-110-GZS, 2013 WL 4541152, at *9 (D. Me. Aug. 27, 2013) (granting summary judgment to defendant on other grounds but noting that a failure to provide a monetary heating allowance as opposed to direct provision of heat would not warrant an accommodation, because the plaintiff had "not demonstrated special circumstances of the type to warrant an exception to [the defendant's] policy on the heating allowance").

Here, PSI failed to demonstrate its requested accommodation was reasonable and necessary or otherwise provide evidence of Barnett "special circumstances" to support its purely financial request for accommodations. Accordingly, PSI did not satisfy its *prima facie* case as to Nautilus's alleged failure to provide a reasonable accommodation under the FHA.

**B.** **Whether Nautilus Violated the Americans with Disabilities Act**

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination under this title includes the imposition of any screening criteria that "screen out or tend to screen out" disabled individuals from fully and equally enjoying services unless the criteria is necessary for the provision thereof, as well as the failure to make reasonable modifications to allow such use unless the medication would "fundamentally alter the nature" of the services. 42 U.S.C. §

12182(b)(2)(A)(i)-(ii). The parties do not dispute that PSI's residents are covered under the ADA. See Jones v. City of Boston, 752 F.3d 38, 58 (1st Cir. 2014) (noting ADA coverage for those recovering from both alcohol and drug addiction). The statute contains a safe harbor for the consideration of risk in insurance policies:

> Subchapters I through III of this chapter and title IV of this Act shall not be construed to prohibit or restrict—
>
> (1) an insurer, hospital or medical service company, health maintenance organization, or any agent, or entity that administers benefit plans, or similar organizations from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law.
>
> 42 U.S.C.A. § 12201(c).[1]

Although PSI does not clearly articulate its theories of liability for its ADA claims against Nautilus, the Court assumes that its claims mirror its theories of liability for its FHA claims, namely disparate treatment, disparate impact and failure to provide reasonable modifications. Tsombanidis, 352 F.3d at 573 n. 4 ("[d]ue to the similarities between the statutes, we interpret them in tandem"). Largely for the same reasons, articulated at length above, that the Court concludes that PSI's FHA claims fail, it concludes that the ADA claims are also deficient. Regarding disparate treatment under the ADA, even accepting the inference of intentional discrimination, PSI fails to offer the Court any evidence to rebut Nautilus's justification for classifying sober homes as halfway houses and correspondingly calculating liability based on occupancy. Nautilus has provided the "rational nexus, based on underwriting experience"

---

[1] Several circuits have concluded "[t]itle III does not reach the terms of the policies offered by an insurer." Baron v. Dulinski, 928 F. Supp. 2d 38, 43 (D.D.C. 2013) (collecting cases). Because the First Circuit does not follow this route, the Court continues. See Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90, 98 n. 4 (1st Cir. 2000) (noting "[w]e have held in Carparts Distribution Center, Inc. v. Auto. Wholesaler's Ass'n, Inc., 37 F.3d 12, 19-20 (1st Cir. 1994), that 'public accommodations' are not limited to actual physical structures, and that the discriminatory denial of benefits under a health care plan might, in some circumstances, state a claim under Title III of the ADA").

sufficient to come within the provisions of the insurance exception under the ADA. Currie v. Grp. Ins. Comm'n, 147 F. Supp. 2d 30, 37 (D. Mass. 2001) (holding classifications satisfied the rational nexus requirement when the record indicated "the denial of benefits to mentally disabled outpatients for more than one year was the product of a concern for the long-term security" of the program in question). Regarding disparate impact, PSI fails to prove its *prima facie* case because it fails to offer evidence to "demonstrate a disparate impact on a group characteristic . . . that falls within the protective ambit of [the ADA]." Femino v. NFA Corp., 274 F. App'x 8, 10 (1st Cir. 2008) (refusing to find disparate impact when "appellant's disparate-impact theory seem[ed] to be nothing more than a dressed-up claim that her benefits were arbitrarily terminated; absent any evidence of discrimination, ERISA provides the appropriate avenue for review"). Regarding failure to modify, PSI has not offered evidence to prove either that the request for modification was reasonable or that it was necessary to afford disabled individuals access to Nautilus's services. See Dudley v. Hannaford Bros. Co., 333 F.3d 299, 307 (1st Cir. 2003) (providing "the plaintiff must show that the defendant has a discriminatory policy or practice in effect; that he (the plaintiff) requested a reasonable modification in that policy or practice which, if granted, would have afforded him access to the desired goods; that the requested modification—or a modification like it—was necessary to afford that access"). On this record there is simply no evidence to conclude that Nautilus violated the ADA.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Nautilus's motion for summary judgment, D. 30.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge